Mr. Dupree, Good morning and may it please the Court. Good morning. My comments, Your Honor, will be very short. I think, and I publicly thank Jack Swift, who is the author of the briefs on this matter, but he could not be here to argue today. In essence, I think the courts below have missed that this is a workers' compensation case and the Section 20 presumption that falls under the Act that the claim falls within jurisdiction of the Longshore Act. Once that presumption exists, it is the employer who has a burden of going forward with the evidence. Our argument is simply this. Having that burden of going forward, when they presented the weak testimony, rather than the actual records which would be dispositive of the issue, a rational decision would have required the adverse inference to be levied against them. And that is the summary of our argument. Kennedy Let me ask a question about this adverse inference rule. Is that a requirement that the fact finder draw this adverse inference, or is it just permissible? Generally speaking, I think it is a permissible, but on the other hand. Kennedy So that ALJ did not have to do it. But having not done so, was his decision rational or irrational? Would anyone faced with the same evidence have reached that conclusion? To not impose it in this case, we submit, would be irrational. Kennedy Go ahead. Well, here you had direct evidence about what this person did, what work this person did. And that would have been enough, ordinarily. But you're saying because there were also time cards, that the employer had the obligation to produce the time cards, even though the employee had not done any discovery to find the time cards and introduce the time cards himself. Is that where you are? Yes. Kennedy Okay. Trial counsel did not ask the Court to hold off the decision until after these time cards were produced. I mean, at the end of all the testimony. Since I was a trial counsel, no. It was very clear at the end of that session that the trial judge had reached its conclusion, and it probably made little difference what we did. Although, candidly, I will share with this Court, given this is a Longshore Act case, and given the provisions of Section 922 of the Act, there is virtually no finality. And, in fact, I think Mr. Mai's remedy, should this Court decline to accept our arguments, would be to, in fact, file a Section 22 modification to reopen for the process of going after that discovery, which was not, for some reason, on the radar at the time of the initial trial. Kennedy I mean, in administrative hearings, you can ask the Court to hold off until you put something else in the record, right? Roberts Theoretically, can you ask? Yes. The probability of that Court continuing the case at that point was nil. The trial court had made very clear that it had looked at the evidence, it had reached its conclusion, and it was not going to consider the adverse inference or even the very conflicting testimony of the witness that went south on the stand. Did any witness other than the petitioner testify in support of his duties being in the shipbuilding area? Not on direct testimony at trial. What we had, the supporting testimony, was a co-worker who got on the stand and recanted his prior statements. He said he had been threatened or coerced or whatever. I think his contention was that he felt pressured by my presence with a private investigator when we took his statement, but he offered no explanation as to how he felt pressured or whether, in fact, his subsequent visit to the employer magnified his feeling of being pressured. He was under oath at the hearing? He was under oath. Okay. Anything else? No, Your Honors. Okay. Thank you. Thanks for coming in today. We'll hear from the Board at this time. Good afternoon. Good morning. May it please the Court, my name is Michael D. McClain of Alicia, Connor & Socha. I'm here present on behalf of Knight & Carver Marine and Signal Mutual Indemnity Association, not present on behalf of the Board. However, I would submit that the decision was not only rational, but as the Court has observed, it was supported by direct eyewitness testimony of four separate witnesses, three of whom were in a supervisory capacity over the claimant. The difficult part about this case, as Mr. Dupree alluded to, is the fact that on May 13th of 2003, two and a half months before the trial, under direct questioning of Leo Martinez at a deposition, Mr. Dupree did elicit testimony indicating there was documentary evidence. That was acknowledged that there were time cards. Mr. Martinez was a direct supervisor of the claimant. He acknowledged under a leading question of Mr. Dupree that, in fact, the time cards were coded. He was being cross-examined. It was a deposition, I believe, that Mr. Dupree set. Of an adverse, potentially adverse witness. Correct. So he's entitled to lead. Correct. What I'm saying, Your Honors, is quite simply, Mr. Dupree's leading question would indicate that there are events, and events acknowledge that those time cards existed on Mr. Dupree's part prior to the deposition. It wasn't something, as stated in Mr. Dupree's brief, that came about as the result of cross-examination at the ALJ trial. It actually occurred two and a half months before that, where there was an acknowledgement by the claimant through his attorney of record that there was documentary evidence that was possibly dispositive. That was never followed up with a discovery response or anything of that nature. The deposition you refer to occurred prior to the hearing? Yes, Your Honor. It occurred two months? May 13, 2003. And it was of Leo Martinez. And Mr. Martinez was a direct supervisor of the claimant. And the reason, Your Honor, is correct, in terms of the evidentiary basis of the question, I didn't have an objection to that. It's the fact that it would evince a knowledge that the cards existed. It wasn't simply a fortuitous result at trial, as was indicated in the Petitioner's brief. The most compelling part of the case is the fact that, as Judge Seiler noted, we're really asking the court in cases such as these as a mandatory act to consider the adverse inference rule. In this case, Judge Dorsey, when presented with the argument concerning adverse inference, essentially said, and I believe this was his quote, he said, in my view, all the witnesses testified to one account of events with the exception of the claimant. And he said he couldn't see any basis for a jurisdictional claim or for this claim to fall under the Longshore Harbor Act. So not only do we have irrefutable testimony, but we've got it from multiple witnesses properly considered by an ALJ in the context of him functioning as a trier of fact. This isn't a case where a discovery response was not responded to. This isn't a case where we've got willful misconduct or suppression. This is a case where percipient testimony established one set of facts. The claimant was unable to rebut that or meet his burden of persuasion, if you will. One of the things you always hope and pray for is in a reviewing court is that administrative agencies and trial courts will be careful about the record. You'll concede that if these time cards were put into the record, I mean, all the evidence screams out that the time cards would have justified the decision made by the ALJ and ultimately by the BRB, but we don't know that. The ALJ didn't ask for them to be produced when the question came up at the hearing. Counsel for the Petitioner didn't ask for them to be produced either at the hearing or before, but we probably wouldn't be here talking about this if they had been. Respectfully, Your Honor, I don't know that the record is that clear because Mr. Cisneros, who was a supervisor, and also Mr. Martinez, who were supervisors, indicated that either they or the claimant filled out that job coding. Neither definitively stated who was responsible for or how they ascertained which codes to use. So respectfully, I would say to the Court, there's theoretically the possibility that it would be dispositive, as Mr. Dupree has asserted. I don't know that the evidence is that clear. And, in fact, in a shipbuilding operation where there's multiple bays, one of which was devoted to windmill construction or refurbishment, I don't know that the coding would have been dispositive of the issue in a large setting. Is this plaintiff still entitled to state workers' compensation? Yes, Your Honor, and that was actually brought to the attention of the Court as well as the claimant in the course of the trial. And Your Honor has acknowledged one of the fundamental issues in this case, which is this claimant does have a remedy. The fact is it's a more lucrative remedy under the Federal Longshore Act than it is under the State Act, but he is not going to be simply left out in the cold, as it were. Just to follow up on that and to make clear, we don't often get Longshoreman Act cases here, but if tomorrow a counsel for a petitioner found the time cards and the time cards, in fact, supported his contention, he could, in effect, file a new proceeding or move to reopen or something of that nature? I think that that would be within Mr. Dupree's rights, and he acknowledged that to the Court. The one final thing that I would say in regard to the case, when we're looking at the adverse inference rule just from a matter of practice, when the party against whom it is being used has the burden of production, typically the courts have found that there has to be some objective conduct that manifests a desire to withhold the evidence because that speaks to the relevance of the evidence and also speaks to the Supreme Court's concern that silence becomes evidence of the most convincing character. In this case, we don't have the proper predicate of a discovery request, so therefore we can't assume or infer adversely against the employer that those documents would have been dispositive or damaging, for that matter. And I would respectfully ask the Court to consider the record as it was and the fact that we adduced significant eyewitness testimony that was credited by the finder of fact or the trier of fact, and the record is substantial evidence, and it was a reasonable decision that was rendered by William Dorsey. Okay. Thank you. Thanks for coming in today. Do you have some rebuttal? Yes, if the Court would allow it. Oh, please. Go right ahead. You've got the time. Attorney McLean makes mention of a deposition of a Leo Martinez. I'm not certain that that deposition is part of the record, but what he does call to the Court's attention was that not only did I, as a trial attorney for the injured worker, apparently know of the existence of these time cards, certainly counsel for the employer knew of them as well. What we're unclear of today, or at least I am, is whether any of us recognized the significance of those time cards. Did they, in fact, did we, in fact, know at that time that the time cards would be coded so we could tell whether Mr. Meyer's time was being charged to the windmill, non-covered employment, or to the shipyard work, which would have been covered? You admit you could have made them produce it at the time of the hearing, right? Theoretically, had I used every discovery option available in an antitrust case, yes. We could have. Those documents, I don't believe, are privileged in any fashion. Is that a long-winded answer, yes, that you could have found the time cards had you asked? Yes. All right. Thank you. So when they went to trial and when they chose their evidence, they knew apparently as well as I did of the existence of these time cards. What clearly came out at trial was the significance of these time cards and their codings, which would have been determinative of whether Mr. Meyer, in fact, worked in covered employment, where you have this conflict in the witness's testimony. Well, it sounds like if they're there and they help you, you can find out and still get relief. Is that correct? That would be my view of the law, although I suspect the employer will resist the protection of those documents, and I can't really suspect that those documents are going to be destroyed at this time. But, yes, Your Honor, I believe that our remedy, should this court fail to reverse the lower court decisions, is a petition for modification. Okay. Thank you. Thanks for coming in today. Thank you both. The case just argued will be submitted for decision.
judges: T.G. Nelson, Siler, Hawkins